IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DM SYSTEMS, INC. | ) |
|    Plaintiff, | ) CASE NO.: 07cv6552 |
|   -vs- | ) JUDGE KENDALL |
| DeROYAL INDUSTRIES, INC. | ) MAGISTRATE JUDGE COLE |
|    Defendant | ) |

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, DM Systems, Inc. ("DM Systems"), by and through its counsel, SWANSON, MARTIN & BELL, LLP, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, hereby moves this Honorable Court for an Order enjoining the wrongful acts of DeRoyal Industries, Inc. ("DeRoyal") described herein. In support thereof, DM Systems states as follows:

### I. INTRODUCTION

1. DM Systems brings this action pursuant to the Lanham Act, Illinois statutory and common law, and the Copyright Act. *See*, *generally*, Plaintiff's Verified Complaint, attached hereto as *Exhibit A*. The case arises from DeRoyal's use of the mark "HEEL BOOST" in connection with a specialized medical boot that looks nearly identical to DM System's product sold under the mark HEELIFT®. DeRoyal's HEEL BOOST mark, product, and instruction guide infringe on DM Systems' registered

trademark, trade dress, and copyrighted product literature.  The equities in this case clearly favor the entry of an Order maintaining the status quo until a hearing on the merits may be had.  Without such an Order, DM Systems' will be irreparably harmed by DeRoyal's continued infringement.

## II. STATEMENT OF THE FACTS

2. In 1993, DM Systems began marketing and selling its patented suspension boot under the brand "HEELIFT." After almost two decades of use, along with extensive promotion, publicity, and advertising costs in the hundreds of thousands of dollars, DM Systems has developed and acquired enormous value, and inestimable goodwill in the HEELIFT suspension boot trademark.  *Id.* at ¶8

3. On November 6, 2001, DM Systems obtained USPTO Registration No. 2504470 for the word mark HEELIFT for its suspension boot ("HEELIFT Mark").  *Id.* at ¶9.  DM Systems' right to use the HEELIFT Mark in commerce became incontestable in 2006 pursuant to 15 U.S.C. §1065.  *Id.* at ¶¶9 - 10.

4. Over the decades of use, DM Systems designed and developed a distinctive and aesthetically pleasing trade dress for its HEELIFT suspension boot.  This trade dress consists of unique and non-functional product configuration, which includes a specialized flesh colored foam boot, two white distinctively sized and placed straps, a distinctive white backing, and a distinctive hole pattern (hereinafter the "HEELIFT Trade Dress").  *Id.* at ¶13.

5. DM Systems is the original author in the creation of and owner of various copyrightable advertisements, product literature, instruction guides, and other marketing materials for the HEELIFT suspension boot.  The copyright in one of the various

HEELIFT instruction guides was registered with the United States Copyright Office in compliance with the Copyright Revision Act of 1976 (17 U.S.C. §101, *et seq.*) and the Copyright Office Regulations (the "HEELIFT Instruction Guide"). *Id.* at ¶¶15 – 16.

6. Defendant manufactures a variety of products for use in the medical field, including suspension boots. In summer 2007, DM Systems first learned of DeRoyal's suspension boot bearing the mark HEEL BOOST. Defendant has offered and continues to offer for sale to the public, in interstate commerce, suspension boots bearing the name HEEL BOOST. *Id.* at ¶¶19 – 21.

7. Defendant's acts of infringement have already repeatedly caused and/or are further likely to cause confusion or a misunderstanding as to the source, sponsorship, or approval of the HEEL BOOST suspension boot and otherwise constitute unfair competition with DM Systems. At least one instance of actual confusion took place in the Chicago area. *Id.* at ¶22.

8. Defendant's HEEL BOOST suspension boot looks nearly identical or at least confusingly similar to the HEELIFT Trade Dress. Even though its suspension boot product is significantly inferior in quality and workmanship, Defendant has superficially copied nearly every aspect of the HEELIFT Trade Dress with the willful intention and purpose of trading on the valuable goodwill associated with the HEELIFT Trade Dress. Defendant has replicated the HEELIFT Trade Dress including, but not limited to, the specialized flesh colored boot, two distinctively sized and placed white straps, a distinctive white backing, and the distinctive hole pattern. Defendant has replicated in substantial detail the unique and distinctive visual presentation of the HEELIFT suspension boot. There are many different ways Defendant could have configured its

3

suspension boot without copying the particulars of DM Systems' HEELIFT Trade Dress, but it chose not to do so.  *Id.* at ¶¶23 – 25.

9. Defendant's use of trade dress that imitates or simulates DM Systems' distinctive trade dress falsely represents to consumers that its product originates with DM Systems or that DM Systems and Defendant are affiliated or have common sponsorship.  It has caused in the past and will continue to cause confusion, mistake or deception among the public, and is likely to cause members of the public mistakenly to believe that Defendant's product originates with or is rendered by or in affiliation with, or under license from, or with the approval of, DM Systems.

10. Defendant has also infringed on the copyrighted HEELIFT Instruction Guide by Defendant's use of the HEEL BOOST instruction guide.  The HEEL BOOST instruction guide is substantially similar to the HEELIFT Instruction Guide in artistic design, drawings, text, and overall layout.

11. Prior to the commencement of this suit, by certified letter dated September 17, 2007, DM Systems advised Defendant that its use of the HEEL BOOST mark infringed the HEELIFT Mark and demanded that Defendant cease and desist all use of the HEEL BOOST mark.  Defendant formally responded to DM Systems' demand by letter dated October 17, 2007, wherein Defendant rejected DM Systems' claims of infringement and refused to cease and desist use of the HEEL BOOST mark.  Absent an immediate Order enjoining DeRoyal's infringement of DM Systems' protectable rights in and to the HEELIFT Mark, HEELIFT Trade Dress, and HEELIFT Instruction Guide, DM Systems will continue to suffer irreparable harm.

### III. PRELIMINARY INJUNCTION STANDARD

12. The purpose of a preliminary injunction is to preserve the status quo between the parties pending final determination on the merits. *Am. Society of Consultant Pharmacists v. Garner*, 180 F. Supp. 2d 953, (N.D. Ill. 2001). To obtain a preliminary injunction, movant must show (1) some likelihood of success on the merits; (2) that no adequate remedy at law exists; (3) that they will suffer irreparable harm which, absent injunctive relief, outweighs the harm the non-movant will suffer if the injunction is granted; and (4) that the injunction will not harm the public interest. *Brown v. Brown, Inc. v. Ali*, 494 F. Supp. 2d 943, 949 (N.D. Ill. 2007). The court employs a sliding scale analysis on a motion for a preliminary injunction, whereby the greater the likelihood of success on the merits, the less of a showing that is required relative to risk of harm, and vice versa. *SMC Corp., Ltd. v. Lockjaw, LLC*, 481 F. Supp. 2d *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir.1992).

### IV. ARGUMENT

#### A. Likelihood of Success on the Merits

##### 1. Legal Standards

*Trademark Infringement (15 USC § 1114)*

13. To prevail on a claim for trademark infringement under Section 1114, a plaintiff must establish that (1) the mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F. 3d 628 (7th Cir. 2001). Trademark infringement is found when the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public, namely, ordinary purchasers purchasing in the ordinary manner. *Ye Olde*

5

*Tavern Cheese Products, Inc. v. Planters Peanuts Div., Standard Brands, Inc.*, 261 F. Supp. 200 (N.D. Ill. 1966), *aff'd* at 394 F. 2d 833 (7th Cir. 1967). The test is the consumer's state of mind when faced with the marks individually. *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir. 1967). Confusion will be found where one adopts a trademark or trade name so like another in form, spelling, or sound that one, with a not very definite or clear recollection as to the real mark, is likely to become confused or misled. *Spangler Candy Co. v. Crystal Pure Candy Co.*, 353 F.2d 641 (7th Cir. 1965). It is incumbent upon the late-comer to avoid such confusion. *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir. 1976). Federal registration of trademark is *prima facie* proof that the registered mark is valid. 15 USC § 1057(b).

14. Seven factors comprise the likelihood of confusion analysis: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off" his product as that of another. *Packman*, 267 F. 3d at 643; *NFE International, Ltd. v. General Resource Corp.*, 558 F. Supp. 1137 (N.D. Ill 1983). Similarity in the sound of trade marks or service marks enters into a consideration of likelihood of confusion. *Id*. Evidence of actual confusion, though not required, is entitled to substantial weight. *Id*.

### *Unfair Competition and False Designation of Origin (15 USC § 1125)*

15. Section 1125 of the Lanham Act is not limited to trademark infringement. *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F. 2d 604, 608 (7th Cir. 1986). It provides a remedy for trade dress infringement as well. <u>Id</u>. "Trade dress" refers to the total

6

image of a product, including features such as "size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Fashion Victim, Ltd. v. Sunrise Turquoise, Inc.*, 785 F. Supp. 1302 (N.D. Ill. 1992).  If a seller adopts a trade dress confusingly similar to a competitor's, this is unfair competition actionable under Section 1125.  *Blau Plumbing*, 781 F. 2d at 608.

16. A plaintiff must prove the following three elements to state a claim under the Lanham Act for false designation of origin: (1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the misrepresentation.  *Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F. 3d 690, 695-696 (7th Cir. 1999).

### *Common Law Unfair Competition*

17. There are no specific elements necessary to allege a cause of action for unfair competition under Illinois common law.  *Wilson v. Electro Marine Systems, Inc.*, 915 F. 2d 1110 (7th Cir. 1990).  Generally speaking, an unfair competition claim requires a misappropriation of the labors and expenditures of another, *i.e.,* one party reaps where another has sown.  *Lynch Ford, Inc. v. Ford Motor Co., Inc.*, 957 F. Supp. 142, 146 (N.D. Ill. 1997).

### *Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 et seq.)*

18. To prove violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2), plaintiff must show likelihood of confusion or of misunderstanding as to source, sponsorship, approval, or certification of goods or services, or as to affiliation,

connection, or association with or certification by another. *See Neopost Industrie B.V. v. PFE Intern, Inc.*, 403 F. Supp. 2d 669 (N.D. Ill. 2005).

### Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.)

19. To successfully make a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1) a plaintiff must set forth the following elements: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that plaintiff rely on the deception, (3) the occurrence of the deception during a course of conduct involving trade or commerce, (4) actual damage to the plaintiff, (5) proximately caused by the deception. *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797 (3rd Dist. 2007). Recovery may be had for unfair as well as deceptive practices. *Id*. To be unfair, the defendant's conduct must: (1) offend public policy; (2) be immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. *Id*. (citing *Robinson v. Toyota Motor Credit Corp*, 201 Ill.2d 403 (2002)). All three criteria do not need to be satisfied to support a finding of unfairness. *Id*. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. *Id*.

### Illinois Trademark Dilution (765 ILCS 1036/65)

20. The Illinois Anti-Dilution Act (765 ILCS 1036/65) is designed to protect a strong trade name or mark from use and dilution by another. *Planet Hollywood (Region IV), Inc. v. Hollywood Casino*, 80 F. Supp. 2d 815, 902 (N.D. Ill. 1999). The IADA empowers courts to grant injunctive relief to enjoin the use of the same or any similar mark, trade name, label or form of advertisement if there exists either a likelihood of

injury to business reputation, or dilution of the distinctive quality of the mark. *Id.* at 903 (citing *Thompson V. Spring Green Lawn Care Corp.*, 126 Ill. App. 3d 99 (1984)).

21.   In any analysis under the IADA, there are two questions that must be answered: (1) is the design mark "distinctive" and, if so, (2) has it been diluted by use of a virtually identical mark. *Id.* When determining the distinctiveness of the mark under the Illinois Anti-Dilution Act, the court considers factors such as: (1) whether the mark is "coined" or invented; (2) the length of time the mark has been used; (3) the scope of advertising and promotion of the mark; (4) the nature and extent of the business; and (5) the scope of the first user's reputation. *Id.* at 902-903. Important factors in determining dilution are the similarity between the marks used by the parties, and the extent of the marketing effort by the second user. *Id.* at 903.

### *Copyright Infringement (17 USC § 502 et seq.)*

22.   The manufacture, distribution and/or sale of an unauthorized copy which is substantially similar to a protected work infringes on the copyright in the work. *See* 17 U.S.C. §§ 106, 501(a); *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502 (7th Cir.1994); *Atari, Inc. v. North Am. Philips Consumer Elec. Corp.,* 672 F.2d 607, 614 (7th Cir.1982). In order to establish copyright infringement, a plaintiff must demonstrate that it owns a valid copyright, and that the defendant copied the protected work. *Wildlife Express,* 18 F.3d at 507.

### 2. **Application of Legal Standards**

23.   DM Systems has the exclusive right to market and sell suspension boots bearing the protected HEELIFT Mark and HEELIFT Trade Dress, and to copy the protected HEELIFT Instruction Guide. DeRoyal has infringed on those protectable

9

rights of DM Systems by selling a suspension boot bearing the confusingly similar mark HEEL BOOST with a nearly identical trade dress.  Further, DeRoyal's HEEL BOOST instruction guide is substantially similar to and therefore infringes upon DM Systems' registered copyright in the HEELIFT Instruction Guide.  The foregoing acts of DeRoyal violate the foregoing federal statutory provisions and Illinois statutory and common law, constituting unfair competition, deceptive trade practices, consumer fraud and deceptive business practices, and dilution of the HEELIFT Mark and HEELIFT Trade Dress.  The consuming public will be confused as to the source and origin of DeRoyal's HEEL BOOST suspension boot.  The HEELIFT Mark will be tarnished and diluted.  Pursuant to the law set forth herein, DM Systems has a high likelihood of succeeding on the merits of each of the foregoing causes of action.  Accordingly, Plaintiff satisfies the first element for preliminary injunction relief.

### B. No Adequate Remedy at Law / Irreparable Harm

24. By its very nature, a claim of invasion of intellectual property such as a copyright or a trade dress demands injunctive relief if the value of that property is not to be destroyed by the alleged infringer.  *Fashion Victim, Ltd. v. Sunrise Turquoise, Inc.*, 785 F. Supp. 1302, 1307 (N.D. Ill. 1992).  The need for such injunctive relief is the paradigmatic example of the absence of an adequate remedy at law.  Id.  Specifically, damages occasioned by trademark and trade dress infringement, trademark dilution and unfair competition are by their very nature irreparable and not susceptible to adequate measurement for remedy at law.  *See Storck USA, LP v. Farley Candy Co., Inc.*, 797 F. Supp. 1399, 1412 (N.D. Ill. 1992) (no adequate remedy at law for trademark and trade dress infringement); *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp

10

1114, 1138 (N.D. Ill. 1995) (trademark and trade dress infringement irreparable and not susceptible to an adequate remedy at law); *Caterpillar, Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913, 923 (C.D. Ill. 2003) (irreparable harm is generally presumed in cases of trademark infringement and trademark dilution); *Brach Van Houten Holding, Inc. v. Save Brach's Coalition*, 856 F. Supp. 472, 474 (N.D. Ill. 1994) (generally no adequate remedy at law for trademark infringement and unfair competition). Injunctive relief is necessary in these instances because "there is no effective way to measure the loss of sales or potential growth-to ascertain the people who don't knock on the door or identify the specific persons who do not reorder because of the existence of the infringer." *Instrumentalist Co. v. Marine Corps League,* 509 F.Supp. 323, 333 (N.D.Ill.1981), *aff'd*, 694 F.2d 145 (7th Cir.1982). Further, damage to reputation and loss of goodwill are presumed irreparable. *Brown & Brown, Inc.*, 494 F. Supp. 2d at 955.

25.    DM Systems asserts claims of trademark, trade dress and copyright infringement, trademark dilution and unfair competition. Thus, absent injunctive relief, DM Systems will suffer irreparable harm, namely the loss of sales, customers, and goodwill which cannot be remedied at law.

### C. Balancing of Harms / Public Interest

26.    In balancing the harms, the court must weigh the error of denying a preliminary injunction to the party who would win the case on the merits against the error of granting an injunction to the party who would lose. FoodComm Intern. v. Barry, 328 F.3d 300, 305 (7th Cir.2003). Further, the court must consider the interest of and harm to nonparties from a denial or grant of the injunction; *i.e.,* the public interest. Reid L. v. Illinois State Bd. of Educ., 289 F.3d 1009, 1021 (7th Cir.2002). The harm to DM

Systems will be great as Defendant's conduct continues to harm the goodwill built and maintained over two decades. Moreover, there is a public interest in preventing consumer confusion and vigorously protecting intellectual property rights that, once infringed, are irreparable. Accordingly, Plaintiff has satisfied the standard for preliminary injunctive relief.

## V. CONCLUSION

27. DM Systems' Complaint sets forth more than sufficient facts to support the granting of a preliminary injunction under controlling federal law. In order to preserve the status quo and prevent ongoing irreparable injury in this case, DM Systems requests the Court to order injunctive relief.

WHEREFORE, DM Systems requests that this Honorable Court enter an Order that Defendant, its officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be preliminarily enjoined and restrained, at first during the pendency of this action and, thereafter, permanently:

> a. From using in any manner the HEELIFT Mark protected by USPTO Registration No. 2504470 and common law, alone or in combination with any word or words which so resemble said trademark as to be likely to cause confusion, deception, or mistake, including, but not limited to the mark HEEL BOOST, on or in connection with the advertising, offering for sale, or sale of any product not DM Systems', or not authorized by DM Systems to be sold in connection with the HEELIFT Mark;

b. From using in any manner the HEELIFT Trade Dress, or any other product configuration or design which so resembles said trade dress as to be likely to cause confusion, deception, or mistake, including, but not limited to the HEEL BOOST trade dress, on or in connection with the advertising, offering for sale, or sale of any product not DM Systems', or not authorized by DM Systems to be sold in connection with the HEELIFT Trade Dress;

c. From passing off, reverse passing off, inducing, or enabling others to sell or pass off any product as a product produced or sold by DM Systems, or not produced under the control and supervision of DM Systems and approved by DM Systems for sale under the HEELIFT Mark;

d. From imitating, copying, or making any other infringing use or infringing distribution of product literature and/or instruction guides protected by DM Systems' registered copyrights, including, but not limited VA 1-077-005;

e. From committing any acts calculated to cause purchasers to believe that Defendant's products are those sold under the control and supervision of DM Systems, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of DM Systems;

f. From further diluting and infringing the HEELIFT Mark and damaging DM Systems' goodwill;

g. From otherwise competing unfairly with DM Systems in any manner; and

h. From assisting any other party in committing the acts described above in Paragraphs (a) – (g).

        Respectfully submitted,

        SWANSON, MARTIN & BELL, LLP

        /s/ P. Stephen Fardy
        One of the Attorneys for
        DM Systems, Inc.

P. Stephen Fardy, #6230900
Brendon P. Friesen, #6291555
Keely V. Lewis #6280469
**SWANSON, MARTIN & BELL, LLP**
330 North Wabash, Suite 3300
Chicago, Illinois 60611
(312) 321-9100

14