**DAJ**

**FILED**

**NOVEMBER 19, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**07 C 6552**

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| DM SYSTEMS, INC. | ) |
| Plaintiff, | ) CASE NO.: |
| -vs- | ) |
| DeROYAL INDUSTRIES, INC. | ) |
| Defendant | ) JURY DEMAND |
|  | ) |

**JUDGE KENDALL**
**MAGISTRATE JUDGE COLE**

## VERIFIED COMPLAINT FOR INJUNCTIVE
## AND OTHER RELIEF

Plaintiff, DM Systems, Inc. ("DM Systems") for its Complaint against Defendant, DeRoyal Industries, Inc. ("Defendant") hereby states as follows:

### NATURE OF THE ACTION

1.      This is an action to recover monetary damages and to obtain a preliminary and permanent injunction for trademark infringement under 15 U.S.C. §1114; Unfair Competition and False Designation of Origin under 15 U.S.C. §1125; dilution in violation of 765 ILCS 1036/65; for unfair competition in violation of the common law of the State of Illinois; deceptive trade practices in violation of 815 ILCS 510/2, *et seq.*; consumer fraud and deceptive business practices in violation of 815 ILCS 505/1, *et seq.*; trademark dilution in violation of 765 ILCS 1036/65; and for Copyright infringement under The Copyright Act, 17 U.S.C. §101, *et seq.*

<u>JURISDICTION AND VENUE</u>

2.     This court has original jurisdiction over the claims in this action which relate to trademark and copyright infringement pursuant to 15 U.S.C. §§ 1116 and 1121, 17 U.S.C. §501, 28 U.S.C. §§ 1331, 1338(a) and (b).

3.     This court has supplemental jurisdiction over DM Systems' state law claims in this Complaint which arise under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. §1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive form a common nucleus of operative facts.

4.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and (c) and 1400(a).  A substantial part of the events giving rise to the claims herein occurred in this District, as the infringing goods and product literature that are the subject of this litigation were distributed, sold, and/or offered for sale in the Northern District of Illinois; Defendant does business in this District with local sales representatives located throughout Illinois, including in the Northern District of Illinois, and is otherwise subject to personal jurisdiction in this District, as further described *infra*.

<u>THE PARTIES</u>

5.     DM Systems is an Illinois corporation with its principal place of business at 1316 Sherman Avenue in Evanston, IL 60201.

6.     Defendant is a Tennessee corporation with its principal place of business at 200 DeBusk Lane in Powell, TN 37849.

2

<u>FACTUAL BACKGROUND</u>

7.     DM Systems is in the market of developing, designing, manufacturing, and distributing advanced and innovative wound care, casting, resistive exercise and rehabilitation products, as well as sports medicine equipment and supplies.     DM Systems' products are used to prevent heel pressure ulcers, relieve elbow pain, and prevent or rehab injuries involving the ankle, shoulder and leg.

### The HEELIFT® Suspension Boot

8.     Since at least as early as 1993, DM Systems has manufactured, sold, and otherwise continuously placed in commerce the HEELIFT suspension boot.     The HEELIFT suspension boot is designed to prevent heel ulcers by elevating and suspending the heel in a protective and padded space, virtually eliminating heel pressure. The HEELIFT suspension boot effectively removes pressure from the heel, by redistributing the pressure to the calf, preventing the development of pressure ulcers. Its use minimizes the chances for irritation or pressure points by gently cradling and cushioning the lower leg while elevating the foot.

### DM Systems' Trademarks and Trade Dress

9.     DM Systems owns all rights, title, and interest in and to USPTO Registration No. 2504470 issued November 6, 2001 for the word mark HEELIFT in International Class 10 for "heel supporting boot for use by bed patients for the prevention and treatment of ankle, foot and heel sores" (the "HEELIFT Mark").     See Certificate of Registration for HEELIFT with Registration No. 2504470 record attached hereto as Exhibit 1.

10.    DM Systems' right to use the HEELIFT Mark in commerce is incontestable pursuant to 15 U.S.C. §1065. DM Systems has continuously used the aforementioned HEELIFT Mark in commerce in connection with suspension boots since at least as early as 1993. These registrations are valid, unrevoked, and uncancelled.

11.    First introduced in 1993, the HEELIFT suspension boot was revolutionary in the heel ulcer prevention and wound care market and in the medical field in general. Recognizing that heel ulcers in bed patients was a primary concern amongst medical practitioners, DM Systems spent and continues to spend thousands of dollars in research, development, and quality control for its suspension boots in order to maintain its extremely high levels of product quality and customer satisfaction.

12.    On account of almost two decades of the aforesaid use, along with extensive promotion, publicity, and advertising costs in the hundreds of thousands of dollars, DM Systems has developed and acquired enormous value, and inestimable goodwill in the HEELIFT Mark.  The HEELIFT Mark has reached recognition with the consuming public in the relevant trade channels in the State of Illinois, nationally, and internationally, particularly in the medical products and supplies market and wound care field.  The HEELIFT Mark has acquired significant secondary meaning as a symbol of the highest quality and reliability for suspension boots.

13.    Concomitantly with the aforementioned use of the HEELIFT Mark, DM Systems has also designed and developed a distinctive and aesthetically pleasing trade dress for its HEELIFT suspension boot.  This trade dress consists of unique and non-functional product configuration, which includes a specialized flesh colored foam boot, two white distinctively sized and placed straps, a distinctive white backing, and a

4

distinctive hole pattern (hereinafter the "HEELIFT Trade Dress").    See attached depiction of the HEELIFT Trade Dress is attached hereto as Exhibit 2.

14.    The HEELIFT Trade Dress, as described above, is easily recognized by the public, is a source identified, and is otherwise understood to mean that the particular suspension boot originates with DM Systems and constitutes a genuine HEELIFT suspension boot.  The HEELIFT Trade Dress has acquired secondary meaning among the relevant trade channels and consuming public as a symbol identifying the HEELIFT suspension boot and the source of high quality goods.

### DM Systems' Copyrights

15.    DM Systems is the original author in the creation of and owner of various copyrightable advertisements, product literature, instruction guides, and other marketing materials for the HEELIFT suspension boot, consisting of various tangible mediums of expression, including photographs, artwork, and text.

16.    The copyright in one of the various HEELIFT instruction guides was registered with the United States Copyright Office in compliance with the Copyright Revision Act of 1976 (17 U.S.C. §101, *et seq.*) and the Copyright Office Regulations. See the HEELIFT Instruction Guide Registration Certificate with Registration No. VA 1-077-005 attached hereto as Exhibit 3 (the "HEELIFT Instruction Guide").

17.    Prior to and after the date the above mentioned copyright was secured; the HEELIFT Instruction Guide was published and distributed in compliance with the Copyright Act.  At all times relevant hereto, DM Systems has owned all rights, title, interest in and to the copyright in the HEELIFT Instruction Guide.

*Defendant's Unlawful Acts*

18.    Defendant is an international manufacturer and distributor of medical supplies and products, with facilities in the United States, Guatemala, Estonia, Canada, Costa Rica, and Ireland. Defendant manufactures a variety of products for use in the wound care field, including suspension boots.

19.    From at least the summer of 2007 and continuing to the date of the filing of this Complaint, Defendant has engaged in a systematic pattern of willful and intentional trademark and trade dress infringement, unfair competition, and false designation of origin, dilution, deceptive trade practices, and copyright infringement.

20.    Defendant, without authorization or license from DM Systems, has willfully and intentionally infringed on the HEELIFT Mark by its adoption and use of the mark HEEL BOOST in connection with their manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell suspension boots. See copy of Defendant's product literature for its suspension boot bearing the mark HEEL BOOST, attached hereto as Exhibit 4.

21.    Defendant has offered and continues to offer for sale to the public, in interstate commerce, suspension boots bearing the name HEEL BOOST. DM Systems' HEELIFT suspension boots are distributed through the same trade channels, are offered for sale to the public through the same retail outlets, and are purchased by the same class of consumers as Defendant's suspension boots which bear the mark HEEL BOOST.

22.    Defendant's acts of infringement have already repeatedly caused and/or are further likely to cause actual confusion or a misunderstanding as to the source,

sponsorship, or approval of the HEEL BOOST suspension boot and otherwise constitute unfair competition with DM Systems.    At least one instance of actual confusion took place in the Chicago area.

23.    Subsequent to DM Systems' first use of its distinctive HEELIFT Trade Dress in the United States, Defendant adopted and began to use a trade dress confusingly similar to the HEELIFT Trade Dress in connection with its HEEL BOOST suspension boot, directly competitive with the HEELIFT suspension boot of DM Systems. *See* Exhibit 4.

24.    Even though they are of significantly inferior quality and workmanship, Defendant has superficially copied nearly every aspect of the HEELIFT Trade Dress with the willful intention and purpose of trading on the valuable goodwill associated with the HEELIFT Trade Dress.    Defendant has replicated the HEELIFT Trade Dress including, but not limited to, the specialized flesh colored boot, two distinctively sized and placed white straps, a distinctive white backing, and the distinctive hole pattern. Defendant has replicated in substantial detail the unique and distinctive visual presentation of the HEELIFT suspension boot.    There are many different ways Defendant could have configured its suspension boot without copying the particulars of DM Systems's HEELIFT trade dress, but it chose not to do so.

25.    Defendant's use of trade dress that imitates or simulates DM Systems' distinctive trade dress falsely represents to consumers that its product originates with DM Systems or that DM Systems and Defendant are affiliated or have common sponsorship, has in the past and will continue to cause confusion, mistake or deception among the public, and is likely to cause members of the public mistakenly to believe

7

that Defendant's product originate with or are rendered by or in affiliation with, or under license from, or with the approval of, DM Systems.

26.    Defendant's use of confusingly similar trade dress is likely to and does permit Defendant to misappropriate and unfairly trade on the valuable good will and reputation of DM Systems and will subject that goodwill and reputation in DM Systems' distinctive trade dress to the hazards and perils attendant upon Defendant's business activities, over which DM Systems has no control.

27.    Defendant has also infringed on the copyrighted HEELIFT Instruction Guide by Defendant's use of the HEEL BOOST instruction guide.  A true and correct copy of the HEEL BOOST instruction guide is attached hereto as Exhibit 5.  The HEEL BOOST instruction guide is substantially similar to the HEELIFT Instruction Guide in artistic design, drawings, text, and overall layout.

28.    Prior to the commencement of this suit, by certified letter dated September 17, 2007, DM Systems advised Defendant of its infringement of the HEELIFT Mark by that Defendant's use of the HEEL BOOST mark and demanded Defendant to cease and desist all use of the HEEL BOOST mark.  Defendant formally responded to DM Systems's demand on October 17, 2007, wherein Defendant rejected DM Systems's claims of infringement and refused to cease and desist use of the HEEL BOOST mark and continues to sell the product that infringes on the HEELIFT Mark and HEELIFT Trade Dress..

## COUNT ONE
**(Trademark Infringement – 15 U.S.C. §1114)**

29.    DM Systems repeats and realleges the allegations contained in paragraphs 1 – 28 as if fully set forth herein.

8

30.    The HEELIFT Mark and the goodwill associated with it is of great and incalculable value, is highly distinctive, and have become universally associated in the public mind with the products of the very highest quality and reputation finding their source in DM Systems.

31.    Without DM Systems' authorization or consent, and having knowledge of DM Systems' well-known and prior rights in the HEELIFT Marks, Defendant has manufactured, distributed, imported, exported, advertised, marketed offered for sale and/or sold their infringing suspension boot, bearing a mark which is confusingly similar to the HEELIFT Mark, to the consuming public in direct competition with DM Systems' sale of suspension boots.

32.    Defendant's use of the HEEL BOOST mark on suspension boots is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the suspension boot, and is likely to deceive the public into believing that the HEEL BOOST suspension boot sold by Defendant originates from, is associated with or are otherwise sponsored, authorized, or approved by DM Systems, all to the damage and detriment of DM System's reputation, goodwill, and sales.

33.    Defendant's aforesaid acts are in knowing and willful violation of DM Systems' rights under 15 U.S.C. §1114, and 15 U.S.C. §1116-1118, inclusive (Lanham Act § 32), which imposes liability for the unconsented use in commerce of any reproduction, counterfeit, copy or colorable imitation of a registered mark which is likely to cause confusion, cause a mistake, or to deceive.

34.    DM Systems has no adequate remedy at law and, if Defendant's activities are not enjoined, DM Systems will continue to suffer irreparable harm and injury to its goodwill and reputation.

35.    As a direct and proximate result of Defendant's conduct, DM Systems has suffered damages to its valuable HEELIFT Mark, and other damages in an amount to be proven at trial.

## COUNT TWO
### (Unfair Competition and False Designation of Origin 15 U.S.C. §1125)

36.    DM Systems repeats and realleges the allegations contained in paragraphs 1 – 28 as if fully set forth herein.

37.    Defendant's actions in using the HEEL BOOST mark in connection with suspension boots is done so knowingly, willfully, and intentionally in violation of 15 USC §1125(A) (Lanham Act §43(a)) which imposes liability for using in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.  Consumers believe they are purchasing the HEELIFT suspension boot when in fact they are purchasing Defendant's HEEL BOOST.  Defendant is trading off the goodwill of DM Systems.

38.    Defendant's actions using the infringing HEEL BOOST trade dress are done so knowingly, willfully, and intentionally in violation of DM Systems' rights under 15 USC §1125(A), in and to the non-functional and distinctive HEELIFT Trade Dress, which imposes liability for using in commerce any word, term, name, symbol, or device,

or any combination thereof, or any false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. Consumers believe they are purchasing the HEELIFT suspension boot when in fact they are purchasing Defendant's HEEL BOOST. Defendant is trading off the goodwill of DM Systems.

39.    DM Systems has no adequate remedy at law and, if Defendant's activities are not enjoined, DM Systems will continue to suffer irreparable harm and injury to its goodwill and reputation.

40.    As a direct and proximate result of Defendant's conduct, DM Systems has suffered damages to its valuable HEELIFT Mark and HEELIFT Trade Dress, and other damages in an amount to be proven at trial.

**COUNT THREE**
**(Common Law Unfair Competition)**

41.    DM Systems repeats and realleges the allegations contained in paragraphs 1 – 28 as if fully set forth herein.

42.    Defendant's use of the infringing HEEL BOOST name and infringing trade dress are being done with the intent to deceive, confuse, and cause mistake as to the origin of the goods or having the sponsorship, affiliation or approval of DM Systems' in order to trade on the goodwill created by DM Systems in the HEELIFT Mark and HEELIFT Trade Dress.

43.    Defendant's unauthorized use constitutes the common law tort of unfair competition

11

44.    The aforesaid acts of Defendant constitute the infringement, imitation, and misappropriation of DM Systems' trademarks, trade dress, unjust enrichment, and unfair competition with DM Systems in violation of DM Systems' rights at common law.

45.    Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to DM Systems.

46.    DM Systems has no adequate remedy at law and, if Defendant's activities are not enjoined, DM Systems will continue to suffer irreparable harm and injury to its goodwill and reputation.

47.    As a direct and proximate result of Defendant's conduct, DM Systems has suffered damages to its valuable HEELIFT Mark and HEELIFT Trade Dress, and other damages in an amount to be proven at trial.

48.    Upon information and belief, Defendant's aforesaid conduct was oppressive, fraudulent and malicious, entitling DM Systems to an award of punitive damages.

**COUNT FOUR**
**(Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*)**

49.    DM Systems repeats and realleges the allegations contained in paragraphs 1 – 28 as if fully set forth herein.

50.    Defendant's use of the HEEL BOOST mark on suspension boots and the HEEL BOOST trade dress constitutes deceptive trade practices in violation of 815 ILCS 510/1 *et seq.* insofar as it:

   a.  Passes off Defendant's products as that of DM Systems';

12

b. Causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of Defendant's goods;

c. Causes a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association with or certification by DM Systems;

d. Represents that Defendant's goods have sponsorship or approval as to the affiliation, connection or association with or certification by DM Systems;

51. Upon information and belief, Defendant has willfully engaged in the deceptive trade practices alleged above.

52. Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to DM Systems.

53. Defendants' statutory violations and other wrongful acts have injured and threaten to continue to injure DM Systems, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its trademark.

54. Defendant has realized revenue and profits by virtue of its wrongful acts that it otherwise would not have obtained and to which it is not entitled.

55. DM Systems has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

56.    DM Systems has no adequate remedy at law and, if Defendant's activities are not enjoined, DM Systems will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT FIVE
### (Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 ILCS 505/1, *et seq.*)

57.    DM Systems repeats and realleges the allegations contained in paragraphs 1 – 28 as if fully set forth herein.

58.    Defendants' acts as stated above, constitute deceptive business practices in that as alleged previously, those acts in trade and commerce use and employ practices set out in Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and/or constitute the use and/or employment of deception, fraud, false pretense, false promise, misrepresentation and/or the concealment, suppression and/or omission of a material fact, with an intent that others rely upon the concealment, suppression or omission of such material fact.

59.    Defendant's violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and other wrongful acts have injured and threaten to continue to injure DM Systems, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its HEELIFT Mark and HEELIFT Trade Dress.

60.    DM Systems has no adequate remedy at law and, if Defendant's activities are not enjoined, DM Systems will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT SIX
### (Illinois Trademark Dilution, 765 ILCS 1036/65)

61.    DM Systems repeats and realleges the allegations contained in paragraphs 1 – 28 as if fully set forth herein.

62.    The HEELIFT Mark has become, and continues to be, famous in the State of Illinois.

63.    Defendant's use of the HEEL BOOST mark in connection with the sale of Defendant's suspension boot began well after the HEELIFT Mark became famous and has caused and will continue to cause dilution of the distinctive quality of the HEELIFT Mark.

64.    Upon information and belief, Defendant willfully intended to trade on DM System's reputation or to cause dilution of the HEELIFT Mark.

65.    Defendant's advertisement, offering for sale and/or sale of the HEEL BOOST suspension boot has injured and threatens to continue to injure DM Systems, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its HEELIFT Mark.

66.    Defendant's acts alleged herein have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable injury to DM Systems for which DM Systems has no adequate remedy at law.

## COUNT SEVEN
### (Copyright Infringement – 17 U.S.C. §502, *et seq.*)

67.    DM Systems repeats and realleges the allegations contained in paragraphs 1 – 28 as if fully set forth herein.

68.    Since the creation of the HEELIFT Instruction Guide, DM Systems has been, and still is, the sole owner of all right, title, and interest in and to the corresponding copyrights and Certificates of Registration.

69.    Defendant has willfully infringed the copyright in the HEELIFT Instruction Guide by copying distributing, without any authorization from DM Systems, infringing instruction guide for the HEEL BOOST suspension boot in the United States.

70.    As a result of the foregoing activities, Defendant is liable to DM Systems for willful copyright infringement under 17 U.S. §501.  DM Systems has suffered, and will continue to suffer, substantial damage to its business reputation and goodwill, as well as losses in an amount to be proven at trial.  In addition to DM System's actual damages, DM Systems is entitled to receive the profits made by Defendant from their wrongful acts, pursuant to 17 U.S.C. §504.  In the alternative, DM Systems is entitled to statutory damages pursuant to 17 U.S.C. §504(c) and these statutory damages should be enhanced in accordance with 17 U.S.C. §504(c)(2) because of Defendant's willful copyright infringement.

71.    DM Systems has no adequate remedy at law for the Defendant's wrongful conduct.   Defendant's acts of copyright infringement have cause DM Systems irreparable injury and Defendant's threaten to continue to commit these acts. Accordingly, DM Systems is entitled to injunctive relief pursuant to 17 U.S.C. §502.

72.    DM Systems is entitled to recover its attorneys' fees and costs of suit pursuant to §17 U.S.C. §505.

16

**WHEREFORE,** Plaintiff, DM Systems, Inc. respectfully requests that this Honorable Court enter judgment against Defendant, DeRoyal Industries, Inc., and that DM Systems receive the following relief:

    1.    That Defendant, its officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be preliminarily enjoined and restrained, at first during the pendency of this action and, thereafter, permanently:

    a.  From using in any manner the HEELIFT Mark protected by USPTO Registration No. 2504470 and common law, alone or in combination with any word or words which so resemble said trademark as to be likely to cause confusion, deception, or mistake, including, but not limited to the mark HEEL BOOST, on or in connection with the advertising, offering for sale, or sale of any product not DM Systems', or not authorized by DM Systems to be sold in connection with the HEELIFT Mark;

    b.  From using in any manner the HEELIFT Trade Dress, or any other product configuration or design which so resembles said trade dress as to be likely to cause confusion, deception, or mistake, including, but not limited to the HEEL BOOST trade dress, on or in connection with the advertising, offering for sale, or sale of any product not DM Systems', or not authorized by DM Systems to be sold in connection with the HEELIFT Trade Dress;

c.  From passing off, reverse passing off, inducing, or enabling others to sell or pass off any product as and for products produced by DM Systems, not DM Systems', or not produced under the control and supervision of DM Systems and approved by DM Systems for sale under the HEELIFT Mark;

d.  From imitating, copying, or making any other infringing use or infringing distribution of product literature and/or instruction guides protected by DM Systems' registered copyright, including, but not limited VA 1-077-005;

e.  From committing any acts calculated to cause purchasers to believe that Defendant's products are those sold under the control and supervision of DM Systems, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of DM Systems;

f.  From further diluting and infringing on the HEELIFT Mark and damaging DM Systems' goodwill;

g.  From otherwise competing unfairly with DM Systems in any manner; and

h.  From assisting any other party in committing the acts described above in Paragraph 1(a) – (g).

2.      That Defendant, within thirty (30) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and

serve upon DM Systems a written report under oath setting forth in detail the manner in which Defendant has complied with Paragraph 1, above;

3.    That the Court enter an Order that Defendant hold their illegal profits as constructive trustees for the benefit of DM Systems and requiring Defendant to provide DM Systems a full and complete accounting of all amounts due and owing to DM Systems as a result of Defendant's illegal activities;

4.    That DM Systems be awarded actual damages and punitive damages in an amount to be proven at trial and that actual damages be increased by a sum not exceeding three times the amount thereof as provided by law by reason of Defendant's willful and intentional conduct;

5.    That DM Systems be awarded its damages and Defendant's profits pursuant to 17 U.S.C. §504(b) or, in the alternative, enhanced statutory damages pursuant to 17 U.S.C. and §504(c)(2), for Defendant's willful infringement of DM Systems' copyright; and

6.    That DM Systems be awarded reasonable attorneys' fees and costs, and have such other further relief as the Court may deem equitable including, but not limited to, any relief set forth under Sections 34-39 of the 1946 Trademark Act and Copyright Act.

7.    Any such other and further relief as this Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

DM Systems demands a jury trial on all issues so triable.

Respectfully submitted,

SWANSON, MARTIN & BELL, LLP

/s/ P. Stephen Fardy
One of the Attorneys for
DM Systems, Inc.

P. Stephen Fardy, #6230900
Brendon P. Friesen, #6291555
Keely V. Lewis #6280469
SWANSON, MARTIN & BELL, LLP
330 North Wabash, Suite 3300
Chicago, Illinois 60611
(312) 321-9100

## VERIFICATION

I, Denis Drennan, MD being first duly sworn on oath, state that I have read the foregoing Verified Complaint for Injunctive and Other Relief and I verify that the statements contained therein are true and correct.

Denis Drennan, MD

DAJ

07 C 6552

Int. Cl.: 10

Prior U.S. Cls.: 26, 39 and 44

Reg. No. 2,504,470

**United States Patent and Trademark Office**    Registered Nov. 6, 2001

## TRADEMARK
### PRINCIPAL REGISTER

JUDGE KENDALL
MAGISTRATE JUDGE COLE

### HEELIFT

DM SYSTEMS, INC. (ILLINOIS CORPORATION)
1316 SHERMAN AVENUE
EVANSTON, IL 60201

FOR: HEEL SUPPORTING BOOT FOR USE BY BED PATIENTS FOR THE PREVENTION AND TREATMENT OF ANKLE, FOOT AND HEEL SORES, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 9-1-1993; IN COMMERCE 9-1-1993.

OWNER OF U.S. REG. NO. 1,884,414.

SEC. 2(F).

SER. NO. 76-198,223, FILED 1-23-2001.

ALEXANDER L. POWERS, EXAMINING ATTORNEY


EXHIBIT

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Oct 13 04:09:01 EDT 2007*



Please logout when you are done to release system resources allocated for you.

List At: [          ] OR [        ] to record: [          ] **Record 6 out of 10**

TARR Status   ASSIGN Status   TDR   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | HEELIFT |
| **Goods and Services** | IC 010. US 026 039 044. G & S: HEEL SUPPORTING BOOT FOR USE BY BED PATIENTS FOR THE PREVENTION AND TREATMENT OF ANKLE, FOOT AND HEEL SORES. FIRST USE: 19930901. FIRST USE IN COMMERCE: 19930901 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 76198223 |
| **Filing Date** | January 23, 2001 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 14, 2001 |
| **Registration Number** | 2504470 |
| **Registration Date** | November 6, 2001 |
| **Owner** | (REGISTRANT) DM Systems, Inc. CORPORATION ILLINOIS 1316 Sherman Avenue Evanston ILLINOIS 60201 |
| **Attorney of Record** | GARY R GILLEN |
| **Prior Registrations** | 1884414 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL-2(F) |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |

Trademark Electronic Search System (TESS)                    Page 2 of 2

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | | CURR LIST |
| | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

DAJ

07 C 6552



JUDGE KENDALL
MAGISTRATE JUDGE COLE

*Heelift*®

*Suspension Boots*

**The Difference is Ins**

EXHIBIT

2

**DAJ** **07 C 6552**

# CERTIFICATE OF REGISTRATION

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VA 1-077-005**



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

**EFFECTIVE DATE OF REGISTRATION**

Month **12**  Day **21**  Year **00**

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**

HEELIFT INSTRUCTION GUIDE

**NATURE OF THIS WORK ▼** See instructions

HEELIFT INSTRUCTION GUIDE

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.  **Title of Collective Work ▼**

If published in a periodical or serial give **Volume ▼**  **Number ▼**  **Issue Date ▼**

**2**

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**a**  **NAME OF AUTHOR ▼**

DM Systems, Inc.

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶ USA
     Domiciled in ▶ Evanston

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See instructions**
☐ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☒ 2-Dimensional artwork     ☐ Photograph   ☒ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

**b**  **NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See instructions**
☐ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☐ 2-Dimensional artwork     ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

**3**

**a** Year In Which Creation of This Work Was Completed  **1999**  ◀ Year in all cases.
This information must be given in all cases.

**b** Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month **September**  Day **1**  Year **1999**  Nation

**4**

See instructions before completing this space.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼

DM Systems, Inc.
1316 Sherman Avenue
Evanston, Illinois  60201

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

APPLICATION RECEIVED
DEC 21 2000
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
DEC 21 2000

FUNDS RECEIVED

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of **2** pages


EXHIBIT
3

EXAMINED BY

CHECKED BY

FORM VA

☐ CORRESPONDENCE
   Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.)
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼         Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**

See instructions before completing this space

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                          Account Number ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.    Name/Address/Apt/City/State/ZIP ▼
   P. Stephen Fardy
   Swanson, Martin & Bell
   One IBM Plaza, Suite 2900
   Chicago, Illinois  60611

Area code and daytime telephone number ▶ (312) 923-8247         Fax number (312) 321-0990

Email ▶ sfardy@smbtrials.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶ {
☐ author
☐ other copyright claimant
☒ owner of exclusive right(s)
☐ authorized agent of DM Systems, Inc.
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

   P. Stephen Fardy                              Date  12/11/00

Handwritten signature (X) ▼

x _____

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
   P. Stephen Fardy
   Swanson, Martin & Bell
Number/Street/Apt ▼
   One IBM Plaza, Suite 2900
City/State/ZIP ▼
   Chicago, Illinois  60611

**9**

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

As of July 1, 1999 the filing fee for Form VA is $30.

MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

June 1999—100,000                    ⊕ PRINTED ON RECYCLED PAPER            ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/71

**READ ME FIRST!**

# Application &
# Fitting Guide

## Heelift® and Heelift® Smooth Suspension Boots

Heelift and Heelift Smooth Suspension Boots are medical devices designed for use as an adjunct to heel pressure prevention and treatment regimens.

Additional indications for the use of Heelift Boots include: malleolar decubitus, foot drop, flaccid paralysis (nonspastic), hip fractures (pre- and post-op) and skin grafts.

In order for Heelift Boots to offer optimal heel pressure relief, it is imperative that the boot is applied and fitted properly. It is mandatory that Heelift Suspension Boots be removed every 8-12 hours to check for ischemia or discoloration.

Since both products are designed to provide a secure, custom fit, you should have no trouble greatly reducing movement of the foot and lower leg.

However, if you need further assistance, contact a Heelift customer support representative by calling

1-800-254-5438

NOTE: *Heelift Smooth Boot offers all of the benefits of original Heelift but features a smooth interior foam surface specifically designed for patients suffering from edema.*

*As application and fitting instructions are identical for both products, the following four-step process applies to either product.*





 **STEP 1** Open up Heelift or Heelift Smooth Boot so that the Velcro® closures and the shin flap are pulled away from the boot as shown above. Set the loose elevation pad aside.



**STEP 3**
Pull the shin flap by the Velcro® closures to the left, over the shin. Hold the closures down while pulling the left-hand Velcro® closures to the right. Then secure the two sets of closures together.

**STEP 4**
Test for proper fit by trying to move the boot with the patient's foot resting in it.

If there appears to be significant movement, then remove the foot and place the loose top elevation pad on top of the bottom elevation pad. (Do not pull off the paper strip that is on the bottom side of the loose elevation pad.) If the addition of the top elevation pad results in a better fit, adhere the pad to the bottom elevation pad by peeling off the paper exposing the adhesive.

**STEP 2**
Place patient's foot inside the boot with the heel positioned above the heel suspension opening, as illustrated above. The patient's heel should hang out over the bottom elevation pad.

To accommodate larger or smaller feet, this pad either may be detached and moved forward or backwards, or trimmed to allow more or less space for the heel.

***IMPORTANT!***
***The padded closures fasten together over the shin-not the foot, a common error.***



If the size of the patient prevents the heel from suspending out beyond the bottom elevation pad, then the bottom elevation pad may be repositioned or trimmed to create a larger space between the pad and the heel suspension opening.

## Application for Additional Uses

**Hip Fractures**
To prevent external rotation as in hip fractures, secure the loose pad to the outer side of Heelift or Heelift Smooth Boot as shown at right.



**Foot Drop**
To prevent foot drop, secure the loose elevation pad in a vertical position behind the sole of the foot as illustrated.





**DM Systems, Inc.**
1316 Sherman Ave. • Evanston, IL 60201
Tel: 800-254-5438 • Fax: 847-328-9561
info@dmsystems.com • www.heelift.com

 

©2000 DM Systems, Inc.  All rights reserved.

DAJ

07 C 6552

# HEEL BOOST

## Pressure Reduction Heel Protector



Convoluted



Smooth

## Indications

- Assist in prevention and treatment of heel decubitus

- Helps prevent hip rotation and foot drop

- Hip fractures (pre and post operative)

## Features & Benefits

- Suspends heel area for pressure reduction

- Posterior panel helps prevent friction against bed surface

- Promotes air circulation and dissipates heat

- Available in convoluted and smooth foam construction

- Extra pads for additional elevation

- Universal in size

- Latex safe

## Product Information

| M60-100 | Convoluted | 6/Case |
| M60-200 | Smooth | 6/Case |



DeRoyal
200 DeBusk Lane
Powell, TN 37949
www.deroyal.com
888.9

EXHIBIT
4

JUDGE KENDALL
MAGISTRATE JUDGE COLE

**DAJ**



**07 C 6552**

**JUDGE KENDALL**
**MAGISTRATE JUDGE COLE**

DeRoyal®

...al Heel Boost

...Single Use Only • Rx Only

...ication

...ers before use. Correct application

...implanting of...

...nsure, drop foot and hip fractures.

...is to be fitted initially by a physician (or ...licensed practitioner who is familiar with the ...for which they are responsible. The physician ...sible for providing use instruc-... precautions to other healthcare practitioners, ...to the patient. ...over two hours to check for skin

...PRECAUTIONS

...shin flap back

...straps and

...the extra pad

...patient's foot inside

... with the heel over-

...ation pad

...elevation

...Note

...pad can be

...turn up turn up ...accommodate for variation in foot size





Elevation pad can also be trimmed to allow for more heel space.

3. Position the shin flap over the shin and secure hook and loop straps closed over the shin area. **DO NOT FASTEN STRAPS OVER THE FOOT AREA.**



4. Ensure boot is properly applied to patient. Patient should not be able to excessively move foot while in the boot. If patient is able to significantly move the foot, remove the foot from the boot and place the extra pad on top of the attached elevation pad. **Note:** Peel the bottom paper strip off of the extra pad only after ensuring it is needed.

**APPLICATION FOR HIP FRACTURES**
Secure extra pad to the outside of the boot to help prevent external hip rotation



**APPLICATION FOR FOOT DROP**
To prevent foot drop secure the extra elevation pad in a vertical position between the bottom of the patient's foot and boot.



**WASHING INSTRUCTIONS**
Hand wash with mild detergent and cool water. Squeeze out excess water. Allow to air dry.



EXHIBIT

S

