**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DM SYSTEMS, INC. ) | |
| ) | CASE NO.: 07cv6552 |
| Plaintiff, ) | |
| ) | JUDGE KENDALL |
| -vs- ) | |
| ) | MAGISTRATE JUDGE COLE |
| DeROYAL INDUSTRIES, INC. ) | |
| ) | |
| Defendant ) | |
| ) | |

**PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY
AND TO SET A HEARING DATE FOR PRELIMINARY INJUNCTION**

Plaintiff, DM Systems, Inc. ("DM Systems"), by counsel, SWANSON, MARTIN & BELL, LLP, moves this Court for an order authorizing expedited discovery and setting this matter for an expedited hearing date on its motion for preliminary injunction. In support thereof, DM Systems states as follows:

1.  DM Systems filed its complaint on November 19, 2007, against Defendant DeRoyal Industries, Inc. ("DeRoyal") for trademark infringement (15 USC § 1114), unfair competition and false designation of origin (15 USC §1125), common law unfair competition, violations of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*), violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*), Illinois trademark dilution (765 ILCS 1036/65), and copyright infringement (17 USC § 502 *et seq.*).

2.  Contemporaneously herewith DM Systems also files a motion for preliminary injunction to enjoin Defendant from further infringement, dilution, and unfair and deceptive trade practices.

3.  DM Systems develops, designs, manufactures, and distributes advanced and innovative wound care, casting, resistive exercise and rehabilitation products, as well as sports medicine equipment and supplies. DM Systems' products are used to prevent heel pressure ulcers, relieve elbow pain, and prevent or rehabilitate injuries involving the ankle, shoulder and/or leg.

4.  DM Systems' product line includes, *inter alia*, suspension boots. Since at least as early as 1993, DM Systems has manufactured, sold, and otherwise continuously placed in commerce the HEELIFT suspension boot. DM Systems has spent and continues to spend thousands of dollars in research and development, as well as quality control, in order to maintain its extremely high levels of product quality and customer support in connection with the HEELIFT suspension boot.

5.  DM Systems owns all rights, title, and interest in and to the United States Patent and Trademark Office ("USPTO") Registration No. 2504470 for the word mark HEELIFT for "heel supporting boot for use by bed patients for the prevention and treatment of ankle, foot and heel sores" ("HEELIFT Mark"). DM Systems' right to use the HEELIFT Mark for suspension boots in commerce is incontestable pursuant to 15 U.S.C. §1065.

6.  In addition to the HEELIFT Mark, DM Systems has also designed and developed a distinctive trade dress for its HEELIFT suspension boot. This trade dress consists of a unique and non-functional product configuration, which includes a specialized flesh colored foam boot, two white distinctively sized and placed straps, a white backing, and a distinctive hole pattern ("HEELIFT Trade Dress").

7. The HEELIFT Trade Dress has acquired secondary meaning among the relevant trade channels and consuming public as a symbol identifying the HEELIFT suspension boot and the source of high quality goods.

8. Further, DM Systems has authored various copyrightable advertisements, product literature, and other marketing materials for the HEELIFT suspension boot, consisting of various tangible mediums of expression, including photographs, artwork, and text (hereinafter the "HEELIFT Advertisement").

9. On or about September 1, 2000, DM Systems secured the exclusive rights and privileges on the copyright of the HEELIFT Advertisement and received from the Register of Copyrights a certificate of registration identified and dated as follows: HEELIFT Advertisement, VA1-091-632, December 21, 2000.

10. Defendant, DeRoyal Industries, Inc., is an international manufacturer and distributor of medical supplies and products. Defendant manufactures and distributes a variety of products for use in the wound care field, including suspension boots.

11. From at least as early as the summer of 2007 and continuously since that time, Defendant has sold and continues to sell in commerce suspension boots bearing the name HEEL BOOST.

12. In addition, subsequent to DM Systems' first use of its distinctive HEELIFT Trade Dress in the United States, Defendant adopted and recently began to use a trade dress substantially and confusingly similar to DM Systems' trade dress in connection with its HEEL BOOST suspension boot, directly competitive with the HEELIFT suspension boot of DM Systems.

3

13. Further, Defendant adopted a HEEL BOOST product literature substantially similar to the HEELIFT Advertisement in color, artistic design, and layout.

14. Defendant's HEEL BOOST suspension boots with confusingly similar trade dress and advertising are distributed through the same trade channels, are offered for sale to the public through the same retail outlets, and are purchased by the same class of consumers as DM Systems' suspension boots bearing the mark HEELIFT

15. At no time has DM Systems authorized or licensed DeRoyal to engage in the foregoing conduct. Defendant has willfully and intentionally infringed on the HEELIFT Mark, Trade Dress and Copyright by its adoption and use of the mark HEEL BOOST in connection with its manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell suspension boots with confusingly similar trade dress and advertising.

16. Defendant's use of a trademark, trade dress and/or advertising that imitates or simulates DM Systems' distinctive trademark, trade dress and/or advertising falsely represents to consumers that its product originates with DM Systems or that DM Systems and Defendant are affiliated or have common sponsorship. Defendant's acts have already repeatedly caused and will continue to cause consumer confusion, misunderstanding, mistake or deception as to the source, sponsorship, or approval of the HEEL BOOST suspension boot and otherwise constitute unfair competition with DM Systems' HEELIFT product.

17. Defendant's use of a confusingly similar trademark, trade dress and/or advertising is likely to and does permit Defendant to misappropriate and unfairly trade on the valuable good will and reputation of DM Systems and will subject that good will

and reputation in DM Systems' distinctive trademark, trade dress and advertising to the hazards and perils attendant upon Defendant's business activities, over which DM Systems has no control.

18.     It is proper for the court to grant a motion for expedited discovery as it provides a fuller record for the court when deciding whether to issue a preliminary injunction. Ty, Inc. v. GMA Accessories, Inc., 959 F. Supp. 936, 945 (N.D. Ill. 1997); Nobel Biocare USA, Inc. v. Lynch, 1999 WL 958501 (N.D. Ill. 1999); Consumer Sales & Marketing, Inc. v. Digital Equipment Corp., 1995 WL 548765 (N.D. Ill. 1995); FNB Bancorp, Inc. v. FNB Bancorp, Inc. et al., 1986 WL 7958 (N.D. Ill. 1986).

19.     DM Systems alleges in its Complaint actual trademark, trade dress and copyright infringement. DM Systems put DeRoyal on notice of these claims on September 24, 2007 when it issued a cease and desist letter to DeRoyal. Nonetheless, DeRoyal has continued its deceptive and infringing conduct and will likely continue said conduct until an ordering staying said conduct is entered by this Court.

20.     The HEELIFT Mark, and the goodwill associated with it, is of great and incalculable value. Consequently, time is of the essence due to the nature of this lawsuit. An expedited discovery schedule is necessary to provide the Court with information required to rule on Plaintiff's motion for preliminary injunction as soon as possible and prevent further injury to Plaintiff. DM Systems will be extremely prejudiced if an order authorizing expedited discovery is not entered.

21.     DM Systems' written discovery requests to be issued to Defendant are attached hereto as Exhibit A ("Discovery Requests"). These Discovery Requests are reasonable and tailored to better enable the court to judge the parties' interests and

respective chances for success on the merits at a preliminary injunction hearing, and to expedite resolution of DM Systems' claims for injunctive relief.

22. DM Systems also respectfully requests that this Court schedule this matter for hearing on DM Systems' Motion for a Preliminary Injunction within 90 days of the date of this Court's order, if granted, in order to further expedite resolution of Plaintiff's claims for injunctive relief.

WHEREFORE, Plaintiff, DM Systems, Inc., respectfully requests that this Honorable Court grant the instant Motion and enter an Order as follows:

(1) Authorizing expedited discovery in this matter;

(2) Requiring Defendant to respond to DM Systems' Discovery Requests within twenty-one (21) days from the date of this Order;

(3) Requiring Defendant to produce its designated corporate representative(s) for deposition within forty-five (45) days from the date of this Order; and

(4) Setting a hearing on Plaintiff's Motion for Preliminary Injunction for ninety (90) days from the date of this Order.

        Respectfully submitted,

        SWANSON, MARTIN & BELL, LLP

        /s/ P. Stephen Fardy
        One of the Attorneys for
        DM Systems, Inc.

P. Stephen Fardy, #6230900
Brendon P. Friesen, #6291555
Keely V. Lewis #6280469
**SWANSON, MARTIN & BELL, LLP**
330 North Wabash, Suite 3300
Chicago, Illinois 60611
(312) 321-9100